# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALIK HANNA DABABNEH, | ) | |
| Petitioner, | ) | Civil Action No. 3: 18-cv-0217 |
| | ) | |
| v. | ) | Chief United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| WARDEN, FCI LORETTO | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION[1]

Before the Court is the *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Malik Hanna Dababneh ("Dababneh" or "Petitioner"), challenging his expulsion from the Federal Bureau of Prisons' Residential Drug Abuse Program and his denial of a sentence reduction under 18 U.S.C. 3621(e), as a result. Dababneh is a prisoner in the custody of the Bureau of Prisons ("BOP") and is currently incarcerated at the Federal Correctional Institution at Morgantown, West Virginia.[2] For the reasons that follow, the Petition will be denied.

## Relevant and Procedural Background

The parties do not dispute the following background facts. Dababneh pled guilty in the United States District Court for the Eastern District of Michigan to the crime of conspiracy to distribute prescription drug controlled substances, in violation of 21 U.S.C. § 846, 841(a)(1),

---

[1] In accordance with the provisions of 28 US.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. (ECF Nos. 5 and 13).

[2] Under § 2241, district courts have authority to grant habeas corpus "within their respective jurisdictions." Petitioner properly filed his § 2241 petition in this Court while he was confined at FCI Loretto. Although Petitioner is currently confined at FCI Morgantown in West Virginia, the relevant consideration is the district of confinement at the time the petition was filed. *See Barden v. Keohane,* 921 F.2d 476, 477 n.1 (3d Cir. 1990).

1

841(b)(1)(C). He was sentenced on August 20, 2015, to a term of 78 months of imprisonment. The sentencing judge recommended that Dababneh be designated to a facility for participation in the BOP's Comprehensive Drug Treatment Program. Dababneh's confinement began on January 15, 2016. Assuming Dababneh receives all good conduct time available under 18 U.S.C. § 3624(b), his projected release date is June 8, 2021. (ECF No. 8-1, Declaration of Ondreya Barksdale at ¶ 2.)

Dababneh was initially incarcerated at FCI McKean. He was then transferred in August of 2018, to FCI Loretto, and is presently incarcerated at FCI Morgantown. Dababneh's complaints in this petition relate to his expulsion from the Residential Drug Abuse Program ("RDAP") conducted at FCI McKean.

Shortly after his arrival at FCI McKean, Dababneh was enrolled in RDAP, which is a substance abuse treatment program for federal inmates with documented substance abuse problems. *See* 18 U.S.C. § 3621(e). If an inmate successfully completes RDAP, the Director of the BOP has discretion to reduce the inmate's sentence by a period not to exceed twelve months. *Id*. at § 3621(e)(2)(B). There are three essential components to the RDAP program. 28 C.F.R. § 550.53(a). The first is a residential unit-based component, which involves the inmate completing activities as assigned by drug abuse treatment specialists and the Drug Abuse Program Coordinator ("DAPC") in a treatment unit set apart from the general prison population. *Id*. at § 550.53(a)(1). Successful completion of the first component requires (i) satisfactory attendance and participation in all RDAP activities, and (ii) passing each RDPA testing procedure. *Id*. at § 550.53(f). The residential unit-based component of the treatment program lasts a minimum of 500 hours, over a nine to twelve-month period. *Id*.

Upon successful completion of the unit-based component, some inmates may be referred to a second component. During this second phase, inmates are given counseling support while they transition into general population. *Id*. at § 550.53(a)(2). The third and final phase of the RDAP component is community Transitional Drug Abuse Treatment. *Id*. at § 550.53(a)(3). Inmates who have completed the unit-based program and follow-up treatment and are transferred to community confinement must successfully complete community-based drug abuse treatment in a community-based program in order to graduate from the RDAP program. *Id*.

Throughout the course of this treatment, prison officials exercise broad discretion in making RDAP programming decisions. An inmate may be expelled from RDAP because of disruptive behavior related to the program or unsatisfactory progress in treatment. *Id*. at § 550.53(g)(1). Ordinarily, an inmate must be given at least one formal warning before being removed from RDAP. *Id*. at § 550.53(g)(2). But a formal warning is not necessary when the documented lack of compliance with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff and other inmates. *Id*.

If an inmate refuses or fails to complete all aspects of the program, that prisoner fails the RDAP program and is disqualified from receiving additional incentives under the program. *Id.* at § 550.56(a). These incentives include financial awards, consideration for the maximum period of time at a community-based treatment program, and local institution incentives, such as preferred living quarters. *Id*. at § 550.54. In 1994, as a further incentive to encourage inmates to seek substance abuse treatment, Congress granted the BOP Director discretion to reduce the sentence of an inmate convicted of a non-violent offense who successfully completed the RDAP by a period not to exceed 12 months. *See* 18 U.S.C. § 3621; 28 C.F.R. § 550.55. However, there are

no guarantees that any particular prisoner will be enrolled in the RDAP program; will be permitted to complete the program; or will ultimately receive this sentence reduction.

In this case, Dababneh lost his eligibility for early release after he was expelled from RDAP on December 6, 2017.

On October 31, 2018, Dababneh filed the instant petition, alleging that he had been wrongfully expelled from RDAP in retaliation "for publicly and privately criticizing" the program and its managers. (ECF No. 1, at ¶ 6). Respondent filed a Response arguing that this Court lacks jurisdiction to review Dababneh's expulsion from RDAP and, in the alternative, that Dababneh has failed to meet his burden in establishing a violation of the Constitution or federal law. (ECF No. 8). In reply, Dababneh argues that "the BOP acted capriciously, by retaliating against Mr. Dababneh by expelling him rather than providing him with treatment" and that his expulsion "violated his liberty and freedom by making him ineligible to participate in early release and RCC." (ECF No. 10).

**Discussion**

A. <u>Review of Agency Decision for Abuse of Discretion</u>

To the extent Dababneh argues that the BOP's expulsion decision was capricious, this Court's review is governed by the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 706. Under the APA, a reviewing court must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at § 706(2)(A).

Respondent argues that the judicial review provisions of the APA are inapplicable to the BOP's expulsion decision, pursuant to 18 U.S.C. § 3625, and, therefore, Dababneh's arguments

that the BOP's decision was capricious provides no basis for habeas relief. The Court finds that Respondent is correct.

Section 3625 of Title 18 provides that the APA sections governing judicial review do not apply to "the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. "This subchapter," i.e., Subchapter C of the Postsentence Administration statute, includes Section 3621, which confers upon the BOP authority to administer and design drug treatment programs such as the RDAP. *See* 18 U.S.C. §§ 3621, 3625. Therefore, Dababneh's argument regarding his expulsion from RDAP is expressly foreclosed from judicial review by 18 U.S.C. § 3625. *See, e.g., Reed v. Thomas,* 636 F.3d 1224, 1227 (9th Cir. 2010) ("there is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701-706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621 - 3624 . . . To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625.").

However, where judicial review under the APA is specifically excluded by statute, the Supreme Court of the United States has found that two questions are still appropriate for judicial review. The first question is whether any cognizable constitutional claims have been presented. If so, federal courts may review the merits of claims alleging that an agency has violated the constitution, even where Congress has precluded review under the APA. *Webster v. Doe*, 486 U.S. 592 (1988). Dababneh claims that the decision to expel him from RDAP violated his constitutional rights. Consideration of this question, therefore, is necessary.

The second question appropriate for judicial review is whether an agency's interpretation of a statute is contrary to well-settled case law. *Neal v. United States*, 516 U.S. 284 (1996). The

5

Supreme Court has held that "[o]nce we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 294-95. Dababneh is not claiming the agency's interpretation of a statute is contrary to well-settled case law; therefore, no consideration of this question is necessary.

Accordingly, the sole issue before the Court in this case is whether Dababneh's constitutional rights were violated when he was expelled from the RDAP.

B. Constitutional Claims

1. *Due Process*

Dababneh first argues that the decision to expel him from RDAP violated his "liberty" interests. This argument can be rejected rather summarily. Dababneh's petition does not identify a sufficient liberty interest affected by his RDAP expulsion to support a due process claim. *See e.g., Reeb v. Thomas*, 636 F.3d 1224, 1229 n.3 (9th Cir. 2011); *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007). Even if due process procedural guarantees applied, they were satisfied here because Dababneh received all the procedural safeguards to which he was entitled under the statute and regulations. Further, given the discretion conferred upon prison officials by § 3621, any substantive due process analysis would be limited to a determination of whether the actions of prison officials were entirely arbitrary and capricious. In this case, considering Dababneh's documented history of non-compliance, spanning over one year, with program requirements, it cannot be said that the decision to expel him from the RDAP program reaches a conscience shocking level of arbitrariness sufficient to find a substantive due process violation. *See Hunterson v. DiSabato*, 308 F.3d 236, 246-57 (3d Cir. 2002) (holding in context of habeas review of parole board decision that the level of arbitrariness required in order to find a substantive due process

6

violation is egregious action or inaction that is "conscious shocking" or "deliberately indifferent.").

2. *Retaliation*

Next, Dababneh argues that his expulsion from the RDAP program was in some way retaliatory and violated his constitutional rights. Inmate constitutional retaliation claims must meet exacting legal standards. To prevail on a claim of retaliation, a prisoner-plaintiff must first establish that he was engaged in constitutionally protected conduct, that he suffered an adverse action that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and that there is a causal link between his constitutionally protected conduct and the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Specifically, Dababneh argues:

> Dr, Valazquez (RDAP C) and the DTS unfairly expelled me from the Program in retaliation for publicly and privately criticizing their management style. They failed to recognize my dual diagnoses of depression and addiction and failed to suggest an increase in my care level. They violated my HIPPA rights and placed me in personal danger with the community. They failed to recognize my good works and punished me for lacking willingness and responsibility. I have never broken any institutional rules and I have never received an incident report and have never been in possession of contraband. I came to them because I was struggling with depression, addiction and potential relapse and their response was uncaring, unprofessional and harmful to my well-being. I put in 20 months of hard work in the RDAP community and I've been at McKean for over 30 months showing exemplary behavior.

*Id.* Dababneh's argument ignores the documented fact that Dababneh's program participation had been problematic as he had numerous violations of RDAP rules from July 15, 2016, through December 5, 2017, and are summarized as follows:

> Inmate Dababneh has received three DAP Warnings while being in the RDAP; he's currently in follow-up services. He has not been displaying basic RDAP skills / concepts in his behaviors such as responsibility and willingness. More specifically he has been pulled up[3] 3 times for not following RDAP rules (wearing lanyard;

---
[3] A "pull-up" occurs when a group facilitator receives a concern from the group about behavior exhibited by another member of the group. The facilitator then presents the concerns that

7

missing count) during the months of Sept. and Oct. He was also fired from his job and did not disclose it to RDAP staff. After received an UA, he disclosed to DAP staff he was smoking K2. Additionally, he did not complete 25 assigned pages from his journal. He is being expelled from RDAP. He can reapply again in 90 days. His Sentry code was changed to reflect his new status. He was also encouraged to participate in Non-Residential treatment to address his drug problems.

Change in RDAP and § 3621(e) Status (ECF No. 8-5 at 21). The Court finds that all of this behavior was wholly inconsistent with RDAP treatment goals and fully warranted expulsion of Dababneh from the program.

For these reasons, the Court finds that even assuming that Dababneh had engaged in First Amendment protected activity, the record evidence of his problematic conduct defeats any First Amendment retaliation claim in this case.

### Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253) (as amended) codified standards governing the issuance of certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. *United States v. Cepero*, 224 F.3d 256, 264-54 (3d Cir. 2000) (en banc), abrogated on other grounds by *Gonzalez v. Thaler*, -- U.S. --, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B).

### Conclusion

For all of the above reasons, the petition for writ of habeas corpus will be denied.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

Dated: May 20, 2019

---

have been received to the inmate. The facilitator then asks the community to provide feedback to the inmate being pulled up in order to correct the behavior. Resp's Resp. at 4, n.3.

cc:     MALIK HANNA DABABNEH
48255-039
FCI Morgantown
PO Box 1000
Morgantown, WV 26507-1000

(via U.S. First Class Mail)

Karen Gal-Or
United States Attorney's Office
(via ECF electronic notification)